Elizabeth J. Harris v. Commissioner.
Harris v. Commissioner
Docket No. 67524.
United States Tax Court
T.C. Memo 1961-324; 1961 Tax Ct. Memo LEXIS 22; 20 T.C.M. (CCH) 1676; T.C.M. (RIA) 61324; December 1, 1961
George E. Danielson, Esq., for the petitioner. John Schlessler, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax and additions to tax for the year 1951 against Earl G. Harris and petitioner, formerly husband and wife, as follows: Additions to Tax, I.R.C. 1939,
under
Deficiency
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
$59,274.64
$5,632.63
$3,755.08
The only questions for decision are (1) whether petitioner and her husband filed a joint return for the year 1951 so that petitioner would be jointly and severally liable for any deficiency; (2) if a joint return was filed, whether petitioner's husband had unreported income of $63,338.47 for *23 1951; and (3) whether the statute of limitations is a bar to this proceeding. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioner is a resident of Hemet, California. A return, indicating on its face that it was the joint return of Earl G. Harris and Elizabeth J. Harris for the taxable year 1951, was filed on April 17, 1952, with the collector of internal revenue at Los Angeles, California. Petitioner was married to and living with Earl G. Harris during 1951 and 1952, and their address during those years was 10 Deodar Lane, Duarte, California. They had moved in 1940 from Detroit, Michigan, to California. They were married in 1933 and divorced in 1955. During the taxable year petitioner's husband and Raleigh P. Nelson were partners in an accounting and insurance brokerage business operated under the name of Earl G. Harris Company, their interests being approximately 69 and 31 percent, respectively. [1] Earl was the only one who invested money in the partnership. Earl was a licensed public accountant. He made some investments in real estate and corporate stocks. He was also a part owner of a night club, and was interested in breeding *24 thoroughbred horses. During the marriage, and in 1951, Earl managed the business and financial affairs of the family. Petitioner had no business experience and did not participate in the management of such affairs. Earl customarily prepared all income tax returns for himself and his wife, whether joint or individual returns. In some instances he had another person prepare them. Before 1951 petitioner and Earl filed joint returns, except for a few years, when community income was split and each reported 50 percent of the income on separate returns. Earl made the decision as to whether joint or separate returns would be filed. Petitioner knew the difference between joint and separate returns and that she was required to report her 50 percent of community income. She left the preparation and filing of returns to Earl, and whether they were joint or separate, she offered no objections to what he did. After the returns were prepared, *25 whether joint or separate, Earl usually took them to petitioner for her to sign. He explained to her the necessity for her signature and in most instances she signed the returns as requested. On one or two occasions she refused to sign the return or returns prepared and in those instances Earl signed her name and initialed the signature to show it was made by him, and he had told her he was doing so. [2] One year Earl, in preparing other taxpayers' returns, was delayed in preparing his and his wife's return, and, at his request, petitioner signed a return in blank in order to expedite the preparation and filing of a timely return. The first return petitioner caused to be prepared and filed for herself was in or for the year 1955. The return filed for the taxable year 1951 was on Form 1040, and was prepared by an employee in Earl's office. It bore the handprinted names of "Earl G. & Elizabeth *26 J. Harris" in the caption at the top of the first page. "Occupation" was shown to be "Insurance Broker." At the bottom of the page in the space provided for signatures, the two names appeared in the form of manuscript signatures. It showed that the "wife (or husband)" was not "making a separate return for 1951" and that a return had been filed for the previous year, 1950. Earl signed his name, and opposite the signature is the date of "4/15/52." An extension to April 15 had been granted for filing the return. Petitioner's name was not signed by petitioner or Earl. There was no signature in the space reserved for the "Signature of person, other than taxpayer, preparing the return." Earl had discussed the return with petitioner and she knew that a joint return was to be filed for 1951. In the rush of his business, Earl signed the return and left it in the office, with the understanding that someone would get petitioner to sign it and then cause the return to be filed. He did not, however, have any further discussion with petitioner about it. On the return, income and losses were reported as follows: Net partnership share from
"Earl G. Harris Company"
$20,886.36
50 percent of $1,000 profit from
sale of corporate stock
500.00
Receipts from "Breeding
Farm - Arabian &
Thorough Bred
Horses" $
Expenses of Breeding
Farm
2,845.98
(2,845.98)
Adjusted Gross Income
$18,540.38
*27 Also shown on the return were interest deductions claimed, as follows: (1) Equitable Life Assurance Society
$381.41
(2) Mrs. George Grosso - 396 Mari-
posa, Alladena, Calif.
132.50
(3) Citizens National Trust & Sav-
ings Bank - C.M.D. Branch
126.88
(4) Community Bank - Huntington
Park
275.00
(5) U.S. Treasury Dept.
92.21
The first amount was paid on a loan in connection with a house in Arcadia, California, the note having been signed by Earl and petitioner. The second amount was paid on a note signed by Earl and petitioner in connection with the acquisition of a portion of land at 10 Deodar Lane, the location of their home. The third and fourth amounts were paid for loans made by Earl, but which he could not have obtained without petitioner's signature. The last amount was paid on obligations of both Earl and petitioner. A deduction was also claimed in the amount of $564.66 for taxes paid on property which was in the names of Earl and petitioner as owners. Petitioner never saw the return until about 1959, when she saw it in the office of the attorney who was then representing her. No one had consulted her with respect to signing her name to *28 the return, and she authorized no specific individual to sign the return for her. She did not file nor did she intend to file a separate return. During 1951 Earl received approximately $10,000 in cashier's checks from the William P. Neal Construction & Maintenance Company, a client of Earl's. During the taxable year the client built the residence in which petitioner and Earl lived at 10 Deodar Lane, furnishing approximately $53,000 in labor and materials. From these two sources Earl received income in the aggregate amount of $63,338.47, which was not reported on the 1951 return. Petitioner and Earl held title to the property as joint tenants. Petitioner knew nothing of the cashier's checks received by Earl, but she was aware of the acquisition of the 10 Deodar Lane property and had assumed it was paid for by Earl from money he received from his businesses. He told her the house was "clear." In 1951, petitioner and Earl had a very comfortable standard of living, a good home, a stable of thoroughbred horses, and, economically, never wanted for anything. In the divorce proceeding, petitioner received the home in the division of community property. The gross income reported *29 by the partnership Earl G. Harris Company for the fiscal year April 1, 1950, to March 31, 1951, was $67,691.03. After deductions of various expenses in the aggregate amount of $37,442.55, "ordinary net income" was reported in the amount of $30,248.48, of which $20,886.36 was reported as Earl's share and $9,362.12 as Nelson's share. Petitioner and her husband had community income in 1951 in the amount of $63,338.47 which was not reported. The 1951 return filed was intended to be a joint return and petitioner knew and intended that Earl should prepare and file a return covering her community income and the decision as to whether the return would be joint or separate was for him to decide. The statutory notice of deficiency, determined on the return filed and addressed to "Mr. Earl G. Harris and Mrs. Elizabeth J. Harris, Formerly Husband and Wife," was mailed by respondent on March 14, 1957. Petitioner and her husband failed to file a declaration of estimated tax for 1951, and their failure to file such declaration was not due to reasonable cause. Opinion Petitioner contends that the 1951 return was not a joint return and that she is not liable for any part of the deficiency *30 found to be due for the year 1951. Under section 51(b) of the 1939 Code, [3] if a joint return is filed by a husband and wife living together, they are jointly and severally liable for the full tax liability. On its face, the return was the joint return of petitioner and her husband. Respondent received it as such, and has since determined that it was a joint return. At the time the deficiency was determined petitioner and her husband were divorced. The deficiency was determined against both and the notice of deficiency was addressed to both, as "Formerly Husband and Wife." The record indicates that each spouse filed a separate petition contesting the deficiency, and that the husband agreed to an adjusted deficiency. Petitioner contends that she did not sign the return; that she did *31 not authorize the party who signed her name to the return to do so; that she authorized no one to sign her name to the return; that she never saw the return until the question of tax liability was raised; that she knew nothing of her husband's unreported income; that she received none of it; that it was her husband's separate income and not community income, and consequently none of it was taxable to her. The fact that petitioner did not sign the return or know that her name was signed to it does not necessarily mean that the return was not or could not be a joint return. , affd. . The determinative factor is whether the spouses intended to file a joint return, their signatures merely indicating such intent. . Intent may be inferred from the acquiescense of the nonsigning spouse. We stated in , affd. : The 1941 return is not signed by petitioner. Her failure to sign that return is not alone determinative. It was held in , that where a husband filed a joint return, *32 without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife. * * * This tacit consent rule has been applied in cases in which respondent, as here, had determined a deficiency against a spouse who had not signed the return, he having determined that there was consent to a joint return despite the spouse's failure to sign the return. , and cases cited therein. It was petitioner's burden to overcome the presumption that the return filed was a joint return. She has attempted to meet that burden primarily by her own testimony, and in our opinion she has failed. While she did not sign the return or tell any specific person to sign it for her, the evidence indicates that she tacitly consented to the filing of a joint return. She admitted that she left the business affairs of the family in the care of her husband, as well as the preparation and filing of the returns. She admitted that she had signed some joint returns and some separate returns, and even one return in blank. She knew the difference between a joint and an individual return. The testimony *33 shows that in at least one year when she refused to sign the return her husband signed her name, initialing the signature to show he had made it, and then told her what he had done, and there is no indication that in each such instance she did not regard the return so filed as an effective return, whether it was a separate or a joint return. Furthermore, she know that her husband's earnings were community income, that she was supposed to report her part of the community income, that she knew a return was to be filed and that she did not intend to file a separate return and in fact did not file such a return. We conclude from the evidence of record that petitioner tacitly consented to the filing of the 1951 return and that it was a joint return. We so hold. Petitioner makes further contention that she had no knowledge of the $10,000 received in cashier's checks; that she had assumed the money used to build the new home was from the various business activities of her husband; that the money so received and that expended in the construction of the home were gifts to Earl, which were his separate property, were not community property, and could not, therefore, be income to her. The record *34 is otherwise. It was Earl's testimony that he was employed by the William P. Neal Construction Company in 1941, 1942 and 1943, that he was its insurance broker from 1944 to 1955 and his accounting firm did their auditing, and that it was through that employment that he was paid the $10,000 through cashier's checks and the further $53,000 expended for labor and materials in the construction of the residence at 10 Deodar Lane. These earnings were thus the community income of Earl and petitioner, no part of which was reported in their 1951 return. Section 275(c) of the 1939 Code provides as follows: SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. The return herein was filed on April 17, 1952, and the notice of deficiency was mailed to petitioner on March 14, 1957, which was thus within five *35 years from the date the return was filed. The income of petitioner and her husband, as reported on the 1951 return, was derived from capital gain of $500 and Earl's share of partnership income, the share consisting of $20,886.36. The gross income of the partnership as reported was $67,691.03, of which Earl's share, according to the partnership return, was 69 percent. The facts show that in 1951 Earl also had earnings of $63,338.47, no part of which was reported in the 1951 return. Quite obviously the unreported income was greatly in excess of 25 percent of the gross income reported in the 1951 return, and the five year period of limitation prescribed in section 275(c) is applicable. The respondent's determination was accordingly timely made. Respondent has conceded that the addition to tax under section 294(d)(2) was not proper, and petitioner has conceded the addition to tax under section 294(d)(1)(A). Decision will be entered under Rule 50. Footnotes
1. Earl testified that his interest consisted of approximately 65 percent, but on the division of the "ordinary net income" ($30,248.48) it appears that Earl received approximately 69 percent ($20,886.36) and Nelson approximately 31 percent ($9,362.12).↩
2. There is nothing of record to indicate that any refusal by petitioner to sign a return prepared by Earl for her signature had anything to do with whether the return was joint or separate, or that such return, when signed by Earl for her, was not intended by her to be an effective return.↩
3. SEC. 51. INDIVIDUAL RETURNS. * * *
(b) Husband and Wife. - (1) In General. - A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. * * *↩